UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:21-CR-00156 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| JAIVAUN MCKNIGHT | ) | FEBRUARY 27, 2024 |
| | ) | |
| | ) | |

**MEMORANDUM OF DECISION**
**RE: MOTION TO SUPPRESS (ECF NO. 437)**

Kari A. Dooley, United States District Judge

On September 14, 2021, Defendant Jaivaun McKnight ("McKnight" or "Defendant") was indicted by a federal grand jury and charged in 5 counts of a 36-count indictment returned against 16 defendants. Specifically, McKnight is charged with RICO Conspiracy (count one) arising out of his alleged involvement with the Waterbury street gang "960"; Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering, (count twelve); Carrying and Using a Firearm During and in Relation to a Crime of Violence, (count thirteen); Conspiracy to Possess with Intent to Distribute Controlled Substances, (count twenty-six); and Possession with Intent to Distribute Heroin and Fentanyl (count thirty). On September 16, 2021, officers of the Waterbury Police Department (WPD) along with agents from the Federal Bureau of Investigation (FBI) arrested McKnight pursuant to a federal arrest warrant issued following the return of the Indictment. On September 17, 2023, officers applied to a judge of the Superior Court for and were granted a search warrant for a silver Infiniti G35, which they identified as belonging to McKnight. Officers executed the warrant and seized 600 white glassine bags containing a substance that ultimately tested positive for heroin. McKnight now seeks to suppress all items seized during the September 17 search, arguing that the warrant was not supported by probable cause in violation of the Fourth

Amendment. In opposition, the Government asserts that the affidavit contained ample facts to establish probable cause and, failing that, the good faith exception to the exclusionary rule precludes suppression. The Government further argues that under the circumstances here, a warrantless search pursuant to the automobile exception to the warrant requirement would have been constitutionally permissible. For the reasons that follow, McKnight's motion to suppress, ECF No. 437, is DENIED.

**FACTUAL BACKGROUND**

The motion does not present factual disputes in terms of the content of the warrant application or the results of the ensuing search.[1] Each is summarized below.

On September 17, 2021, Detectives Medina and Sanchez of the Waterbury Police Department (the "affiants") applied to the Connecticut Superior Court for a warrant to search a vehicle previously observed in McKnight's possession and which they believed contained evidence that McKnight had violated Conn. Gen. Stat. § 21a-278(b), Possession of Narcotics with Intent to Sell. *See* Gov. Ex. A ("Warrant with Supporting Aff. and Appl." or "Warrant") at 2, ECF No. 472-1.[2] The warrant application, including the supporting affidavit, was prepared on the State of Connecticut's standard warrant application Form JD-CR-61. *Id*. The first page of the application sought permission to search a "silver colored Infiniti G35 bearing Connecticut marker AT-53010," and indicated that officers had probable cause to believe that located therein was heroin, cocaine, crack cocaine, packaging materials, scales, drug paraphernalia, cell phones, records of illegal drug transactions, and records reflecting illegal profits from drug trafficking, among other things. *Id*.

---

[1] Although the Government argues that no evidentiary hearing is required, McKnight does not seek an evidentiary hearing or identify any facts in dispute that are germane to his motion. He asserts only his standing to seek suppression, which is not contested, and a determination that the four corners of the affidavit do not support a finding of probable cause for the issuance of the warrant.

[2] The page numbers cited to in this ruling regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

The affiants first summarized their experience as members of the Waterbury Police Department, their assignment to the WPD Gang Task Force (GTF), and the composition and purpose of the GTF. *Id*. at 3 ¶ 1. To support a finding of probable cause, they included the following narrative:

For several years, the City of Waterbury was "plagued with violent crimes, weapons violations, assaults with weapons and homicides." *Id.* at ¶ 2. Eventually, it was determined that "rival gangs were operating" in the city, one of which was a gang identified as "960." Following a joint investigation with federal authorities, a RICO case was brought which resulted in a "federal arrest warrant for 960-member Jaivaun McKnight." *Id.* Specifically, on September 14, 2021, following the joint investigation by the WPD and the FBI, a federal grand jury returned an indictment charging Jaivaun McKnight, among other defendants, with Racketeering Conspiracy, Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering, Carrying and using a Firearm during and in Relation to a Crime of Violence, Conspiracy to Possess with Intent to Distribute Controlled Substances, and Possession with Intent to Distribute Heroin and Fentanyl. *Id*. at 3–4 ¶ 4.

Members of the GTF had already begun collecting background information on McKnight's whereabouts, in anticipation of the federal charges. *Id*. at 3 ¶ 3. GTF officers discovered that McKnight had an intimate relationship with an Alexis Clark, with whom he had a child. *Id*. They also identified 143 Newbury Street, Apartment 2E as a possible address utilized by Clark, and they therefore established surveillance at that location. *Id*. On September 15, 2021, at approximately 4:00 PM, Detective Medina and another GTF officer observed McKnight exit 143 Newbury Street and enter a silver Infiniti with Connecticut plate number AT-53010. *Id*. at 4 ¶ 5. Officers conducted

a motor vehicle inquiry on the plate, which revealed that it belonged to a different car and was confirmed to be stolen as of June 27, 2021. *Id.* at 4 ¶ 6.

After McKnight left the residence in the Infiniti, Detective Medina continued to surveil the building. At approximately 8:00 PM, he observed the silver Infiniti return to 143 Newbury St. and identified McKnight as the operator and sole occupant of the vehicle. *Id.* at ¶ 7. Medina observed McKnight approach 143 Newbury St. and use a key to enter the building. *Id.*

On September 16, 2021, GTF Officers and FBI agents responded to 143 Newbury St, made contact with McKnight, and took him into custody, pursuant to the federal arrest warrant issued following the September 14 indictment. *Id.* at ¶ 8. At that time, officers observed an Infiniti key fob on the apartment's dining room table. McKnight confirmed to Detective Medina that the fob belonged to the silver Infiniti, and that the Infiniti belonged to McKnight and was unregistered. *Id.*

Sergeant Lanese, also of the WPD, responded to the scene of McKnight's locked Infiniti in the parking lot. He looked through the vehicle's windows and observed, in the center console, "several clear plastic bags consistent with the appearance and manner in how narcotics are packaged for street sale." *Id.* at ¶ 9. Sgt Lanese could also observe the cup holder in the center console, in which he saw "an ash tray with what appeared to be burnt marijuana cigarettes." *Id.* Based on those observations, and his awareness of "McKnight's history as well as involvement in narcotic sales," Sgt Lanese requested and received the assistance of a narcotic detection K-9. *Id.*

Connecticut State Trooper Michael Houle responded to the scene with his K-9 partner, Waffle. Waffle was certified by the Connecticut State Police Canine Unit and the Connecticut State Forensic lab to alert to the odor of controlled substances, including heroin, fentanyl, cocaine, and crack cocaine. *Id.* at 4–5 ¶ 10. Waffle was trained to provide a "passive alert" when he detected any of those substances, by sitting down at the source of the odor. *Id.* Trooper Houle and Waffle

conducted an exterior sniff of the Infiniti. Waffle alerted to the rear seam of the passenger side door "through numerous behavioral changes." *Id*. at 5 ¶ 11. Based on the K-9's alert, the Infiniti was towed from the scene and secured at the WPD. *Id*. at ¶ 12.

Based upon these events, Officers applied for the warrant at issue here, which application was granted by a Connecticut Superior Court Judge on September 17, 2021. *Id*. at 8.

When officers executed a search of the Infiniti, they found approximately 490 white glassine bags containing a tan powder like substance each stamped with a picture of the Hulk, and approximately 110 white glassine bags containing a tan powder like substance each stamped with "WANTED." *Id*. at 9. That substance later field-tested positive for heroin. Mot. to Suppress ("Def.'s Mem.") at 2, ECF No. 437-1.

**STANDARD OF REVIEW**

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

"To be lawful under the Constitution, a search warrant must, *inter alia*, set forth evidence establishing probable cause to believe a crime has been committed and that evidence of that crime can be found in what is to be searched." *United States v. Weigand*, 482 F. Supp. 3d 224, 240 (S.D.N.Y. 2020). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Although the probable cause standard "does not demand 'hard certainties' . . . it does require more than a 'hunch.'" *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023) (quoting *Gates*, 462 U.S. at 238, and *Terry v. Ohio*, 392 U.S. 1, 22,

27 (1968)). Therefore, "[i]n determining whether probable cause exists to support the issuance of a warrant, a judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019) (cleaned up). This decision "must be grounded in sufficient facts to establish the sort of 'fair probability' on which 'reasonable and prudent men, not legal technicians, act.'" *Lauria*, 70 F.4th at 128 (quoting *Gates*, 462 U.S. at 231, 238, 241).

A court reviewing an issuing judge's finding of probable cause "must accord considerable deference to the probable cause determination." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007); *see also Gates*, 462 U.S. at 236 ("[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." (internal quotations omitted)). The reviewing court's task "is simply to ensure that the totality of the circumstances afforded the [issuing judge] 'a substantial basis' for making the requisite probable cause determination." *United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015) (quoting *Gates*, 462 U.S. at 238). Additionally, the issuing judge's "finding of probable cause is itself a substantial factor tending to uphold the validity of [a] warrant." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). In the end, any doubts that remain "should be resolved in favor of upholding the warrant." *Id.*

**DISCUSSION**

McKnight moves to suppress any and all evidence seized from the search of the silver Infiniti on September 17, 2021, on the grounds that the warrant authorizing the search was unsupported by probable cause. Def.'s Mot. to Suppress at 1, ECF No. 437. In opposition, the

Government argues that the warrant affidavit contained ample facts to establish probable cause, and that even if the affidavit fell short of establishing probable cause, that the good-faith exception to the exclusionary rule prevents suppression. Gov't Opp'n at 2–3, ECF No. 472. The Government also maintains that given the circumstances, the officers would have been constitutionally permitted to conduct a warrantless search of the Infiniti under the "automobile exception" to the warrant requirement. *Id*. at 6–8.

McKnight contends that probable cause was lacking because it was based entirely on three inadequate "assertions or assumptions:" 1) the officers' awareness of McKnight's history and his involvement in narcotic sales; 2) Sergeant Lanese's plain-view observation of the plastic baggies and marijuana cigarette butts in the Infiniti's center console; and 3) the K-9's alert to the vehicle. Def.'s Mem. at 6–7. In combination, McKnight argues that these flawed assertions fail to establish probable cause. Specifically, McKnight argues that the affiants' recitation of McKnight's prior involvement with narcotics sales did not include any specifics as to where and when the alleged prior narcotic sales took place, and therefore this assertion "adds little if anything to a determination of probable cause." *Id*. at 6. With respect to the plastic baggies and marijuana butts in the center consoler, McKnight notes that the affidavit does not identify the bags' contents, and that marijuana was recreationally legal in Connecticut as of July 1, 2021. *Id.* at 7. Finally, as to the K9 alert, McKnight argues that the affidavit was internally inconsistent insofar as it asserts that Waffle was trained to passively alert to narcotics by sitting down, but then does not assert specifically that Waffle alerted to narcotics by doing so. *Id*. at 4, 7.

The Court, however, does not evaluate the issuing judge's finding of probable cause piecemeal, but instead looks at the decision "given all the circumstances set forth in the affidavit before him." *Boles*, 914 F.3d at 102. And McKnight ignores significant portions of the affidavit

which contribute to the finding of probable cause. Indeed, the affidavit provided the court with ample information with which to make the "practical, common-sense" determination required under *Boles* that there was a "fair probability that contraband or evidence" would be discovered in the Infiniti. This is not a close call.

First, McKnight was identified by law enforcement as a known member of a street gang—960. As the affiants aver: "These known street gangs are involved in distribution, transportation and sales of illegal narcotics …" Warrant at 3 ¶¶ 1–2. Second, McKnight had been indicted by a federal grand jury just days earlier and charged with a RICO Conspiracy arising out of his involvement with the street gang 960. *Id*. at 3–4 ¶ 4. Third, the indictment, which may only be returned upon a finding of probable cause, also charged McKnight with conspiracy to possess with the intent to distribute controlled substances and possession with intent to distribute heroin and fentanyl. *Id*. Fourth, consistent with the allegations in the indictment, Sgt. Lanese observed what he recognized to be packaging materials associated with narcotics distribution in the center console of the vehicle.[3] *Id*. at 4 ¶ 9. And fifth, Waffle alerted to the presence of controlled substances. *Id*. at 5 ¶ 11. Added to these facts, McKnight was observed to be the sole occupant of the vehicle when it arrived at 143 Newbury Street and admitted that the vehicle was his and that he knew it was unregistered. *Id.* at 4 ¶¶ 5–8.

---

[3] McKnight does not contest affiants' statement that they saw clear plastic bags in plain view but contends that because the affidavit did not mention whether they contained or appeared to contain narcotics, they "add nothing to the probable cause determination." Def.'s Mem. at 7. The Court rejects this argument. The presence of drug packaging materials is directly probative of narcotics distribution. *See, United States v. Pughe*, 441 F. App'x 776, 778 (2d Cir. 2011) (Affirming denial of suppression motion noting as one factor to be considered was officer's plain-view observation of "empty plastic sandwich bags like the baggies in the glove compartment" which the officer characterized as "immediately indicative ... of the same type of baggies that we commonly see narcotics packaged in.") Here, the opening paragraph of the affidavit revealed that the affiants had a combined "32 years police training and experience," and described the bags seen through the car window as "consistent with the appearance and manner in how narcotics are packaged for street sale." Warrant at 3–4, ¶¶ 1, 9. The issuing court was entitled to credit the affiants' expert opinion regarding the bags. *See United States v. Cruz*, 785 F.2d 399, 405 (2d Cir. 1986) (citing *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) ("A number of cases have ruled that an agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application.").

This information, anchored by the then-recent indictment, provided a substantial basis for the judge's finding of probable cause. *See United States v. King*, No. 3:17CR149 (JBA), 2018 WL 4005734, at *5 (D. Conn. Aug. 22, 2018) ("Though not conclusive on its own, Magistrate Judge Garfinkel was entitled to consider that indictment in determining whether Special Agent King's affidavit supported a finding of probable cause.") Indeed, the fact that a grand jury indicted McKnight for narcotics-related offenses and for his membership in an organization known by police to engage in illegal narcotics sales contributes significantly to the totality of the circumstances analysis required under *Thomas*. *Thomas*, 788 F.3d at 350.

McKnight's third argument regarding Waffle does not undermine a finding of probable cause. He relies upon the different language the affiants used to describe how Waffle was trained to alert to the odor of controlled substances—"the dog is trained to sit at the source of the odor"—versus how they reported that he actually alerted to the Infiniti—"Waffle alerted through numerous behavioral changes…". Warrant at 4–5 ¶¶ 10–11. According to McKnight, "if the dog sitting at the source of the odor is the key sign of an alert for a narcotic substance then the Affidavit does not contain a description of any alert consistent with the odor of narcotic substances." Def.'s Mem. at 7.

The Court is not persuaded. The affiants averred that Waffle alerted to the presence of narcotics. Describing with particularity the canine's behavior is not required. The Affidavit made clear that Waffle was certified by the Connecticut State Police Canine Unit and the Connecticut State Forensics lab on substances such as heroin and fentanyl. Warrant at 4 ¶ 10. Trooper Houle was identified in the affidavit as a certified K9 handler who was present at the scene when Waffle alerted. The affidavit indicated the Trooper Houle conducted the exterior sniff of the vehicle with Waffle, and was therefore present for the alert in question, indicating that the alert was reliable.

9

*Id*. at ¶¶ 10–11. The Supreme Court in *Fla. v. Harris*, 568 U.S. 237, 246–47 (2013) held that "[i]f a bona fide organization has certified a dog…, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *See also, United States v. McKenzie,* 13 F. 4th 223, 238 (2d Cir. 2021)("The uncontested canine alert on the [vehicle] is sufficient to support a finding of probable cause."); *United States v. Manson,* 2023 WL 5096021 *3(D. Conn. August 9, 2023) (Denying motion to suppress and holding "K-9 Kurt's alert – standing alone – was enough to establish probable cause.").

Considering the totality of the circumstances as set forth in the warrant affidavit, the issuing court had a substantial basis to find that probable cause existed to support the issuance of the warrant to search the Infiniti. McKnight has not identified any factual issues with the warrant affidavit, nor submitted any affidavits raising any disputed factual issue. As such, the Court may properly deny McKnight's motion to suppress without an evidentiary hearing. *See United States v. Gillette*, 383 F.2d 843, 848-49 (2d Cir. 1967).

Because the Court finds that the warrant was unquestionably supported by probable cause, it need not address whether the evidence seized would be nonetheless admissible under the good faith exception to the exclusionary rule, nor the argument that a warrantless search would have been constitutionally permissible under the automobile exception to the warrant requirement.

**CONCLUSION**

For the foregoing reasons, Defendant McKnight's motion to suppress, ECF No. 437, is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of February 2024.

                         */s/ Kari A. Dooley*
                         KARI A. DOOLEY
                         UNITED STATES DISTRICT JUDGE